**WESTINGHOUSE ELECTRIC CORPO-RATION, Defendant, Appellant,**

v.

**WRAY EQUIPMENT CORP., Plaintiff, Appellee.**

**ALD NEW YORK, INC. Defendant, Appellant,**

v.

**WRAY EQUIPMENT CORP., Plaintiff, Appellee.**

Nos. 5682, 5683.

United States Court of Appeals First Circuit.

Feb. 2, 1961.

John M. Hall, Boston, Mass., with whom Rhodes G. Lockwood and Choate, Hall & Stewart, Boston, Mass., were on brief, for appellant Westinghouse Electric Corp.

Douglas L. Ley, Boston, Mass., with whom Elliott V. Grabill, Nathaniel J. Young, Jr., and Grabill, Ley & Mason, Boston, Mass., were on brief, for appellant ALD New York, Inc.,

James M. Malloy, Boston, Mass., with whom Ralph Warren Sullivan and Morton Myerson, Boston, Mass., were on brief, for appellee.

Before WOODBURY, Chief Judge, HARTIGAN, Circuit Judge, and JULIAN, District Judge.

HARTIGAN, Circuit Judge.

These are appeals from a judgment of the United States District Court for the District of Massachusetts entered for plaintiff on March 25, 1960.

Plaintiff-appellee, Wray Equipment Corp., sued Westinghouse Electric Corporation (Westinghouse) and ALD New York, Inc. (ALD) for treble damages under the Sherman and Clayton Acts, 15 U.S.C.A. § 1 et seq., alleging that the defendants and various co-conspirators had conspired and were conspiring to monopolize and unreasonably restrain interstate

trade and commerce in half-hour launderette machinery and equipment, and that by various acts done in furtherance of this conspiracy plaintiff had been injured in its business.

The plaintiff alleged that the conspiracy and acts in furtherance of it included: (1) an agreement between Westinghouse and ALD that Westinghouse would not sell its nine pound laundry machines to any launderette machinery distributor other than ALD and that ALD would purchase nine pound machines only from Westinghouse; (2) pursuant to the agreement and with the approval of ALD, Westinghouse refused to sell its nine pound machines to plaintiff at any price; (3) with the approval of Westinghouse, ALD refused for several months to sell nine pound machines to plaintiff at a price lower than that charged individual launderette operators and subsequently ALD refused to sell nine pound machines to plaintiff at any price; (4) with the approval of Westinghouse, ALD used its exclusive right to distribute Westinghouse nine pound machines to cause prospective launderette operators desiring these machines to purchase from ALD their entire requirements of twenty-five pound laundry machines, dryers, etc.; (5) with the approval of Westinghouse, ALD used its exclusive right to distribute the Westinghouse nine pound machine as the basis for threatening manufacturers of twenty-five pound machines, boilers, dryers, etc. with a boycott if they did not discontinue making sales to the plaintiff. Plaintiff alleged, *inter alia*, that as a result of the conspiracy and the acts in furtherance of it, (1) plaintiff had been prevented from making sales of Westinghouse nine pound machines to launderette operators; (2) plaintiff had been prevented from making sales of boilers, dryers, etc. to launderette operators who desire to use Westinghouse nine pound machines; (3) manufacturers of the associated equipment have refused to sell to plaintiff and have refused to meet shipping commitments on machines already sold to plaintiff.

The case was tried by the district court sitting without a jury. An unnecessarily protracted trial of twenty-eight days was held during which a great deal of evidence was received by the court over the objection of the defendants. The district judge announced several times that in order to conduct the trial expeditiously he would receive the evidence but that it was subject to a motion to strike to be made at the conclusion of the trial. Motions to strike were made by the defendants at the close of the evidence. In the preface to its findings of facts and conclusions of law the lower court stated: "Defendant ALD submitted a Motion to Strike, which is denied."[1]

The court made findings of facts and conclusions of law that plaintiff was entitled to recover treble damages under the Sherman and Clayton Acts and entered judgment for the plaintiff.

Defendants in their appeals specify numerous errors, but we do not believe it is necessary to discuss all of them in the disposition which we make of this case.

We believe that the district court erred prejudicially by failing to grant defendants' motions to strike certain evidence objected to by the defendants. The president of Hoyt Manufacturing Corp., Harry Hoyt, was called as a witness by the plaintiff to testify in connection with an alleged attempt by ALD to have Hoyt Manufacturing Corp., a manufacturer of dryers, slow down delivery of a dryer to plaintiff. When Hoyt was asked at the trial if defendant ALD's employee Rowan had spoken to him about an order from plaintiff, Hoyt replied that he had no recollection of such a conversation. Plaintiff's counsel then asked: "Do you recall testifying on deposition in this case * * * ?" Hoyt replied: "I recall making a deposition, yes, sir." Plaintiff's counsel then read from the deposition, stating he was so doing for two purposes, to refresh the witness' recollection

1. The record does not contain any disposition by the court of defendant-Westinghouse's motion to strike certain evidence from the record.

and to indicate a prior inconsistent statement. At the conclusion of the reading, plaintiff's counsel asked Hoyt:

"Q. Do you recall so testifying, Mr. Hoyt? A. If that is my deposition, I do.

"Q. The statements you made there are true? A. They would be, yes, sir."

On cross-examination Hoyt was asked:

"XQ. Do you have any memory now of the conversation you had with Mr. Rowan? A. Other than what the deposition shows. [sic]

"XQ. Did Mr. Rowan make any suggestions to you that the shipment to Wray Equipment Company be delayed? A. I do not recall."

Earlier in his testimony when Hoyt was questioned by plaintiff's counsel in regard to the delay of shipment he said:

"Q. You have no recollection of these transactions, independent of the documents I must show you? A. No, I haven't. I haven't had access to them. It has been, what, four or five years?

"Q. You do recall that you testified at some length about these transactions? A. I do.

"The Court: You knew you were going to be a witness here?

"The Witness: Yes, sir.

"The Court: You knew you had answered some questions by way of deposition?

"The Witness: Yes, sir.

"The Court: Did it occur to you it would have been a good idea to refresh your recollection on the questions that you were asked in the deposition, at the time it was taken, when you knew you were going to be here?

"The Witness: Mr. Malloy [counsel for plaintiff] said that he would have the deposition here."

In the deposition read during the trial Hoyt had stated: "That was one of my reasons [for delaying the plaintiff's order]. I tried to exercise a certain amount of prudence. If a man is going to hold me up, I am not going to find out whether he has a real bullet in his gun." The district judge in commenting on this testimony recognized that Hoyt was not testifying from his present recollection and said: "Figuratively speaking, someone put a gun to his head. * * * He [Hoyt] gave an answer four and a half years ago, and he very frankly and honestly said: 'If I gave that answer under oath, my memory then was better than now, and that is the answer' and that is what I would expect a good citizen to say * * *.'"

■■ The cases are clear, however, that a deposition used in an attempt to refresh the witness' recollection is not itself admissible as evidence. See United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 234, 60 S.Ct. 811, 84 L.Ed. 1129; 5 Wigmore, Evidence § 1415 (3d ed. 1940). When a witness is unable to recall a past transaction, the majority of the cases do not allow a prior statement of the witness concerning that transaction to be introduced as a prior inconsistent statement. See Corsick v. Boston Elevated Ry., 1914, 218 Mass. 144, 105 N.E. 600; 3 Wigmore, Evidence § 1043 (3d ed. 1940).[2] We believe that the district court erred in receiving the deposition of plaintiff's witness Hoyt. The incorporation of Hoyt's gun figure of speech from his deposition in the court's opinion as well as frequent references to it by the court during the trial indicates that defendants were prejudiced by the admission into evidence of the deposition.

■ There is another matter which arose during the trial that warrants comment because it may be met again in a new trial. Parts of several other depositions were properly admitted and read

2. Wigmore states that the basis of this exclusion is the possibility of improper testimonial effect being given to the prior statement. The instant case presents a forceful example of this danger.

into evidence by plaintiff's counsel. When counsel for the defendants sought then to have introduced other parts of these depositions relevant to those read into evidence, relying on F.R.Civ.P. 26(d) (4), 28 U.S.C.A., the district court refused to allow such procedure. The court indicated that defendants could introduce the desired parts at a later time.[3]

We have been directed to no cases bearing directly on this point. Rule 26(d) (4) provides:

> "If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts."

The rule provides a method for averting, so far as possible, any misimpressions from selective use of deposition testimony. The opposing party is entitled under the rule to have the context of any statement, or any qualifications made as a part of the deponent's testimony also put into evidence. We believe that the spirit of the rule dictates that the opposing party should be able to require the introduction of the relevant parts of the deposition testimony at least at the conclusion of the reading of the deposition. In the instant case the supplementary relevant testimony authorized by the rule was separated by more than 1,000 pages of transcript from the deposition testimony introduced by the plaintiff. It seems to us that such wide separation of the relevant parts of a deposition unduly impedes the orderly consideration of the deposition testimony, even in a non-jury case.

We conclude from a careful reading of the record of approximately 2,000 pages that the trial judge was prejudiced in favor of the plaintiff. Several indications of this prejudice are manifest in his "cross-examination" of certain of the defendant's witnesses. Perhaps his prej-udice was a result of Hoyt's reference to a gun in his deposition, which appears from the record to have made an extreme and unreasonable impression on the trial judge. Whatever the cause, the court's prejudicial attitude warrants a new trial before another judge.

We express no opinion on the merits of this case.

Judgment will be entered vacating the judgment of the district court and remanding the case for a new trial consistent with this opinion.

---

3. Toward the end of the trial the plaintiff's counsel offered the parts read by defendants' counsel as part of plaintiff's case and the court so noted. We do not believe that this step obviated the defect pointed out below.