UNITED STATES of America,
Appellee,

v.

Murray Bernard WEINER, Appellant.

No. 572, Docket 72–2284.

United States Court of Appeals,
Second Circuit.

Argued Feb. 1, 1973.

Decided April 30, 1973.

Milton S. Gould, New York City (Shea, Gould, Climenko & Kramer, Michael Lesch, New York City, and Frank C. Razzano, Yonkers, N. Y., on the brief), for appellant.

David M. Brodsky, Asst. U. S. Atty., S. D. New York (Whitney North Seymour, Jr., U. S. Atty., and John W. Nields, Jr., Asst. U. S. Atty., S. D. New York, on the brief), for appellee.

Before ANDERSON, FEINBERG and MULLIGAN, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

Murray Weiner, then a branch chief for the Securities and Exchange Commission in Washington, D. C., was called to testify on August 3, 1966, before the Grand Jury for the United States District Court for the Southern District of New York pursuant to its investigation of possible violations of 18 U.S.C. §§ 201, 371, specifically whether confidential, non-public information of the SEC concerning the Georgia Pacific Corporation had been improperly disclosed by a public official. During the course of his Grand Jury testimony, Weiner was examined concerning his relationship with a New York attorney, Philip Peltz, who was later convicted of four counts of violations of the securities laws arising out of the activities then under investigation by the Grand Jury, see, United States v. Peltz, 433 F.2d 48 (2 Cir. 1970), cert. denied, 401 U.S. 955, 91 S. Ct. 974, 28 L.Ed.2d 238 (1971). In response to questions, Weiner said that he had met Peltz once, in February or March, 1966, at the Manhattan apartment of a mutual friend, Seymour Katz, but that otherwise he had never met or written to Peltz and, as far as he could remember, he had never talked with him on the telephone. He did, however, mention a late night telephone call on April 15, 1966, that awakened him out of his sleep, but he said that he never knew who the party was who had called. Weiner was subsequently indicted and convicted of perjury, 18 U.S.C. § 1621, on the basis of this Grand Jury testimony.

On appeal, he asserts certain errors in the failure of the trial court to strike certain testimony and in its failure to instruct the jury that some of the allegedly false statements were not proven. Finding no reversible error, we affirm.

At the trial of Weiner on a single count of perjury, Peltz was the Government's chief witness and he testified extensively concerning meetings and telephone conversations with Weiner, as well as letters received from him. As to the meetings, Peltz said that he had met Weiner five or six times, beginning with a social gathering sometime in 1963. Thereafter he saw him at one or two other social gatherings between 1963 and early 1966. The next occasion when they met was at Katz' apartment in

February, 1966, which was the incident acknowledged by Weiner in his Grand Jury testimony.

Peltz also testified that he met Weiner again at Katz' apartment on a Sunday morning either March 13 or 20, 1966, (hereinafter referred to as the March 20 meeting). At that time, according to Peltz, Weiner had a plaid suitcase and he showed Peltz some sheets of paper printed with "purplish" ink. In support of Peltz' testimony concerning this meeting, the Government offered the testimony of two SEC employees that Weiner had received in March, 1966, a confidential memorandum concerning the Georgia Pacific Corporation which had been printed with purple ink, although it was also acknowledged that the use of purple ink was not particularly distinctive or unique with SEC documents. Another Government witness, a member of Weiner's car pool in March, 1966, testified that Weiner sometimes carried a plaid suitcase to work on Fridays, if he were going traveling. The Government also introduced evidence that Weiner had purchased an Eastern Airlines ticket on March 18, 1966, which might have been for a flight from Washington to New York.

Peltz testified to a final meeting with Weiner on either April 17 or 24, 1966, for Sunday breakfast at a Second Avenue restaurant (hereinafter referred to as the April 17 meeting). In support of this testimony, the Government introduced into evidence an Esso credit card charge record slip showing that Weiner had purchased gasoline on April 17, 1966, at a station in New Jersey just outside the Holland Tunnel.

With regard to telephone calls, Peltz testified that he had made four or five to Weiner and had received two or three from him. On some of these calls, Peltz gave no details and on others he was no more specific than to say it was a call which he made from a coinbox outside the Bronx County Court House, or from his girl friend's apartment. There were two calls, however, the substance of which he more fully related.

The first was from Peltz to Weiner on April 9, 1966, and concerned Peltz' efforts to arrange a date for Weiner with a certain girl and Weiner's suggestion to Peltz that he contact one Irwin Deutsch who could recommend a stockbroker for Peltz. Peltz admitted that he had no independent recollection of the date of that call, but his memory had been refreshed by a notation in his personal diary. In substantiation of this testimony, Deutsch testified that Weiner telephoned him on April 9 or 10 and asked if Deutsch could recommend a stockbroker for a friend, and Deutsch said to have the friend call him. Deutsch also testified that Peltz called him on April 11th for the name of a stockbroker; Deutsch was certain that Peltz was the friend to whom Wiener had been referring.

The second was a long distance telephone call by Peltz from a New York office to Weiner at his Maryland home at about 1:30 a. m. on April 15, 1966; that he, Peltz, had billed the call to his home telephone number and that he talked about five minutes with Weiner concerning the current status of the Georgia Pacific investigations. In confirmation of this call, telephone company records were introduced which showed that a five and one-half minute call from the New York office to Weiner's home number, billed to Peltz' home number, had in fact been made on April 15th.

Peltz also testified to receiving three letters from Weiner. The first, dated September 26, 1963, recited that Weiner and Peltz had met some months previously, and, on the strength of this, Weiner was seeking some information from Peltz concerning a friend of Weiner's who wanted to sell a car in South America.

The second letter, dated March 30, 1966, was a request for Peltz to arrange a date for Weiner with a girl. It also included some references to the freeing-up of lettered stock. The third letter, dated May 5, 1966, was another request for Peltz to arrange a similar date. Both of the 1966 letters were signed

"Mel," and Peltz testified that Weiner was using the pseudonym "Mel Fine" at that time.

To show that Weiner was the author of the May letter, the Government introduced testimony from an F.B.I. expert to the effect that it was only an extremely remote possibility that the letter was not typed on a certain IBM typewriter which, in May, 1966, was located some seventy-five feet from Weiner's office in the SEC building.

In his defense, Weiner admitted writing the 1963 letter and acknowledged that he must have met Peltz sometime prior to that, as was indicated in the letter; however, he claimed that he had no independent recollection of the letter or meeting and that he did not knowingly lie to the Grand Jury concerning these items.

As to the remaining meetings, telephone calls, and letters, Weiner denied all of them except the February, 1966, meeting which he had divulged to the Grand Jury. He also testified that he had traveled to New York often in the spring of 1966 to visit an ill father.

Weiner explained the April 15 telephone call by saying that he had received a call sometime after midnight on that date, but that he was so sleepy that he terminated the call without knowing who was on the other end. He claimed that the five and one-half minute length of the call, as recorded by the telephone company, was a result of his rather unusual Eroica phone and its failure to disconnect properly.

Weiner also vigorously disputed, with expert testimony, the opinion that the May letter was very likely typed on the SEC typewriter. Furthermore, he introduced testimony to show that in any event it would have been unlikely for him to have used that particular machine.

Although this was a one count indictment, by its Bill of Particulars, the Government had specified three instances of perjury in Weiner's Grand Jury testimony: (1) that he had only met once with Peltz; (2) that he could not recall talking on the telephone with him; and (3) that he had never written him. Without the so-called two-witness rule,[1] there would be little need for discussion on the issues in this case, as Peltz' testimony alone would be sufficient to convict Weiner on any one of the three perjurious statements. In prosecutions for perjury, however, it has long been the rule that a conviction may not be obtained solely on the uncorroborated oath of one witness, Weiler v. United States, 323 U.S. 606, 607, 65 S. Ct. 548, 89 L.Ed. 495 (1945); Hammer v. United States, 271 U.S. 620, 626, 46 S.Ct. 603, 70 L.Ed. 1118 (1926). The rule is satisfied by the direct testimony of a second witness or by other evidence of independent probative value, circumstantial or direct, which is "of a quality to assure that a guilty verdict is solidly founded." United States v. Collins, 272 F.2d 650, 652 (2 Cir. 1959), cert. denied, 362 U.S. 911, 80 S.Ct. 681, 4 L.Ed.2d 619 (1960).

The precise formulation of the quality of the corroborating evidence, however, has resulted in what appears, on its face, to be a division among the Circuits. This Circuit has held that the independent evidence must, by itself, be "inconsistent with the innocence of the [defendant]," United States v. Hiss, 185 F.2d 822, 824 (2 Cir. 1950), cert. denied, 340 U.S. 948, 71 S.Ct. 532, 95 L.Ed. 683 (1951); United States v. Buckner, 118 F.2d 468, 469 (2 Cir. 1941); United State v. Isaacson, 59 F.2d 966, 968 (2 Cir. 1932); see also, United States v. Freedman, 445 F.2d 1220, 1225–1226 (2 Cir. 1971). This test is also applied in the Third Circuit, United States v. Neff,

1. Effective October 15, 1970, the two-witness rule has been eliminated for grand jury perjury prosecutions, 18 U.S.C. § 1623(e), but the Government quite properly does not contend that the rule was eliminated in this case where the alleged perjury took place in 1966 and the defendant was indicted in 1969, cf. United States v. Clizer, 464 F.2d 121 (9 Cir. 1972).

212 F.2d 297, 307 (3 Cir. 1954), the Fifth Circuit, McWhorter v. United States, 193 F.2d 982, 983 (5 Cir. 1952),[2] and the Sixth Circuit, United States v. Thompson, 379 F.2d 625, 628 (6 Cir. 1967), but the Ninth Circuit, Arena v. United States, 226 F.2d 227, 236 (9 Cir. 1955), cert. denied, 350 U.S. 954, 76 S. Ct. 342, 100 L.Ed. 830 (1956), and First Circuit, Brightman v. United States, 386 F.2d 695, 697 (1 Cir. 1967), have expressly rejected this exact wording and have held that the corroborating evidence is sufficient if it, *together with* the direct evidence, is inconsistent with the innocence of the defendant.

As the Ninth Circuit has expressed it,

"One requested instruction contains the statement that the corroborating evidence must be 'inconsistent with the innocence of the defendant'. We have already seen that the weight of authority is opposed to so severe a standard for the corroborating evidence. It is sufficient if the corroborating evidence *tends* to establish the defendant's guilt, and if such evidence *together with* the direct evidence is 'inconsistent with the innocence of the defendant'." Arena v. United States, *supra*, 226 F.2d at 236.

Nevertheless, an examination of the facts and circumstances of the cases with a view to discovering the differences which result from the actual application of the two formulations of standards for the corroborative evidence discloses that if they differ at all, the divergencies are very few and very narrow. In Brightman v. United States, *supra*, 386 F.2d at 697 the court cited with approval United States v. Thompson, *supra*, which was decided under the stricter standard, comparable to that used in the Second Circuit, and by so doing the First Circuit implied it would also have held the claimed corroboration inadequate. In the *Thompson* case the de-

fendant testified he had asked a particular police officer to call a lawyer. The policeman testified he had but one conversation with the defendant who had made no mention of a lawyer. Two F. B.I. agents corroborated this one conversation. They could not testify in support of the policeman that there was no other conversation between him and the accused. The First Circuit account of this case in *Brightman* went on to say, "For the proposition that there had been only one conversation between them on that day there was only the testimony of the police officer. Therefore, the FBI testimony was not substantial evidence that the defendant had perjured himself no matter which standard of corroboration was applied." The division in the Circuits, judged by its results, appears to be a matter of semantics and a slight difference in emphasis.

No Circuit has held that the corroborative evidence must, in itself, be sufficient, if believed, to support a conviction. In other words the two-witness rule has not been construed to require the Government, in effect, to prove its case twice over. At the other edge of the spectrum the corroboration of a casual or incidental bit of testimony given by the main witness for the prosecution on a matter which did not tend to show that the accused's statements under oath were false, could not be accepted as complying with the two-witness rule. In *Arena, supra*, the Ninth Circuit said it would not recognize trivia; and the First Circuit indicates that it would not treat, as qualifying corroboration, anything less than substantial evidence tending to support the charge.

We construe the Second Circuit rule requiring that the independent corroborating evidence be "inconsistent with the innocence of the defendant" to mean no more than that such evidence must tend to substantiate that part of

---

2. *McWhorter*, however, differs from the holding in the Second Circuit as to an extra-judicial admission by the defendant and the corroboration of such an admis-

sion. See United States v. Goldberg, 290 F.2d 729, 734 n. 1 (2 Cir. 1961) ; United States v. Kahn, 472 F.2d 272 (2 Cir. 1973).

the testimony of the principal prosecution witness which is material in showing that the statement made by the accused under oath was false. This is to say that the two-witness rule is satisfied by corroborative evidence of sufficient content and quality to persuade the trier that what the principal prosecution witness testified to about the falsity of the accused's statement under oath was correct. In United States v. Goldberg, 290 F.2d 729, 734 (2 Cir. 1961), we said, "The policy underlying the rule against a conviction simply by 'oath against oath' is met when the [single or principal witness'] oath is supported by testimony of a second witness sufficient to 'confirm the single witness' testimony and to induce the belief of it,' 7 Wigmore Evidence, p. 277 . . ." This also means that the evidence is "of a quality to assure that a guilty verdict is solidly founded." United States v. Freedman, *supra*, citing United States v. Collins, *supra*.

The Supreme Court has said:

"Two elements must enter into a determination that corroborative evidence is sufficient: (1) that the evidence, if true, substantiates the testimony of a single witness who has sworn to the falsity of the alleged perjurious statement; (2) that the corroborative evidence is trustworthy." Weiler v. United States, *supra*, 323 U.S. at 610, 65 S.Ct. at 550.

This standard for the sufficiency of corroborative evidence can only be interpreted to mean that it must be evidence which bears directly on and substantiates the testimony of the principal witness for the prosecution who has testified under oath that the statement made by the accused under oath was false; it therefore cannot escape being "inconsistent with the innocence of the defendant." Of course, it is for the jury to decide the trustworthiness of the evidence, what weight should be accorded it and the credibility of the witnesses.

■ After the foregoing discussion of what is and what is not corroborative evidence for the purpose of the two-witness rule in perjury cases, sight must not be lost of those cases in which the second witness has given independent testimony of another, separate and distinct incident or transaction, which if believed, would prove that what the accused said under oath was false. This is, of course, a primary compliance with the two-witness rule, and it is of no consequence whether his testimony is corroborative of the first witness' story in whole, in part or not at all. For example, if in the present case the Government had produced a second witness who testified that he knew both Peltz and Weiner and that he had seen them together on a street in New York City on the morning of April 30, 1966, though Peltz had not testified to meeting Weiner on that day, this testimony by the second witness would have satisfied the two-witness rule because it was independent evidence of a separate and distinct instance of a meeting of Peltz and Weiner which showed that Weiner had testified falsely under oath in telling the Grand Jury that he had never met Peltz except once in February or March 1966. Of course, there was no such second witness or testimony about any such meeting in the present case and it is only mentioned as an illustration of the kind of second witness testimony which fulfills the requirement of the rule and yet does not literally corroborate the first witness' testimony about a particular meeting, telephone call or letter but instead, provides evidence of a separate and distinct instance or transaction to prove that Weiner lied when he testified that he had no meetings, calls or correspondence with Peltz. United States v. Hiss, *supra*, (implied by dictum); United States v. Seavey, 180 F.2d 837 (3 Cir.), cert. denied, 339 U.S. 979, 70 S.Ct. 1023, 94 L.Ed. 1383 (1950); United States v. Palese, 133 F.2d 600, 602–604 (3 Cir. 1943).

■ Turning to the evidence in the present case it is abundantly clear that there was sufficient to support the jury's finding of guilt regarding all

three instances of alleged perjurious testimony to the Grand Jury. The case has been briefed and argued to a large extent on the basis of the testimony of Peltz as the primary and principal witness and on the issue of whether or not there was sufficient corroboration to satisfy the two-witness rule. Regarded from this point of view, there is no doubt that there was sufficient evidence in quantity and quality to comply with the two-witness rule and to convict.

As to the allegations that Weiner, in spite of his sworn testimony that he had not written to Peltz and had not met with him other than in February, 1966, had in fact done both of these things, the extensive consideration of Peltz' testimony on these points and the adequacy of the corroborating evidence need not have been gone into, because Weiner's admissions at trial that he wrote the 1963 letter which recited that he had previously met Peltz were sufficient to establish the charge that he testified falsely before the Grand Jury. In fact the letter alone, as documentary evidence, was sufficient, as authenticated by Peltz and Weiner, to show that Weiner had both written to and met with Peltz prior to 1966. The letter superseded the necessity of other proof to establish these facts. It was up to the jury to decide whether or not the letter was sufficient evidence that Weiner testified falsely when he said he had never met or written to Peltz. United States v. Wood, 39 (14 Pet.) U.S. 430, 441, 10 L.Ed. 527 (1840); United States v. Goldberg, 290 F.2d 729, 735 (2 Cir. 1961); United States v. Collins, *supra*; Fraser v. United States, 145 F.2d 145, 151 (6 Cir. 1944), cert. denied 324 U.S. 842, 65 S.Ct. 586, 89 L.Ed. 1403 (1945). As pointed out in Hammer v. United States, *supra*, 271 U.S. at 627, 46 S.Ct. at 604, the two-witness rule applies only to "the unsupported testimony of one witness as to falsity of the matter alleged as perjury," and "does not relate to the kind or amount of other evidence required to establish that fact."

The remaining instances charged as perjurious statements by Weiner before the Grand Jury had to do with telephone calls. Deutsch's testimony that Peltz called him on April 11, 1966, for the recommendation of a stockbroker after Weiner told Deutsch on April 9 or 10 that a friend of his would be calling Deutsch on that very matter, confirmed Peltz' testimony that Weiner called him; moreover the telephone company record of the New York to Maryland call on April 15, 1966, corroborated Peltz' account of that call. The evidence provided the sufficiently independent support, inconsistent with the innocence of the defendant, which is necessary to satisfy the two-witness rule.

There was, however, other evidence in the case which was somewhat corroborative of parts of Peltz' testimony but which, in spite of the Government's claims, did not satisfy the two-witness rule because it was not independent and not inconsistent with the innocence of the accused. In support of the March 20th meeting, the Government showed that Weiner owned a plaid suitcase, as Peltz had said, and that Weiner had been given some papers printed with purple ink, which Peltz claimed to have seen, and that Weiner had purchased an airline ticket that he might have used to go to New York. But these are not sufficient corroboration, as apart from Peltz' testimony, the mere fact that Weiner had a plaid suitcase, papers with purple ink, and an airline ticket is not probative of the fact that he met with Peltz. Likewise, as to the April 17th meeting, the mere fact that Weiner purchased gasoline in New Jersey was no independent corroboration of a meeting with Peltz on that day. Also the notation in Peltz' diary of his April 9, 1966, call to Weiner was not *independent* corroboration of that call, United States v. Rose, 215 F.2d 617, 626 (3 Cir. 1954).

These items of evidence, although insufficient for the two-witness rule, gave general support to Peltz' testimony and were, therefore, relevant evi-

dence for the jury, *see, e. g., Hiss, supra*, 185 F.2d at 831, n. 3.[3]

There was only one count of perjury charged against the appellant, though three incidents of false statements made to the Grand Jury under oath were alleged and proved either by documentary evidence in writing or by testimonial evidence, duly corroborated where required. The remaining points raised on appeal in the light of well settled law did not constitute reversible error and do not call for any discussion.

Although not mentioned on the appeal, it may be noted that the trial court's charge,[4] in dealing with the quality required for the corroborative evidence, used the language of the *Goldberg* case but coupled it with the clause, "and if the corroborative evidence *together with* the direct testimony of the one witness is inconsistent with the answers by the defendant which the Government claims to be false." [Emphasis supplied.] While from its context, it was probably not intended as such, this is almost the exact language of the Ninth Circuit rule set out in the *Arena* case, which slightly differs from the rule of this Circuit. For this reason it is preferable that it not be used. Of course, there was no objection to the charge and the use of the clause did not even approach plain error.

The judgment of conviction is affirmed.

3. It could be argued that United States v. Freedman, 445 F.2d 1220, 1226 (2 Cir. 1971), holds that supporting evidence, insufficient to be corroborative for purposes of the two-witness rule, must be withdrawn from the jury's consideration. We read *Freedman*, however, to say only that a jury must be properly charged that there is insufficient corroboration of a particular alleged perjurious statement, if such is, in fact, the case.

4. The charge on the two-witness rule was as follows:
"The law with regard to this element of the crime of perjury has a particular rule for the amount of proof required to show that a defendant's testimony was false. In order to convict a defendant of prejury, the falsity of his testimony must be established by the direct testimony of two witnesses whose testimony you, the jury, believe to be true, or by the direct testimony of one such witness corroborated by other evidence independent of and in addition to the testimony of the one witness which is believed by you and which is found by you to substantiate the testimony of that one witness.
In other words, the law does not allow a person to be convicted of perjury solely on the basis of the testimony of one person against that of another.
Where one witness testifies to the fact of perjury, independent corroborative evidence suffices under the rules if it tends to confirm the truth of the witness' testimony in material respects and thereby induces belief in his testimony, and if the corroborative evidence together with the direct testimony of the one witness is inconsistent with the answers by the defendant which the Government claims to be false. Written or other documentary evidence which you find originated from the defendant may qualify for your consideration as corroborative evidence."