**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert THOMPSON, Jr., Defendant-Appellant.**

**No. 16982.**

United States Court of Appeals
Sixth Circuit.

June 29, 1967.

Otto F. Putnick, Cincinnati, Ohio (Court Appointed), for appellant.

Ernest W. Rivers, U. S. Atty., Louisville, Ky., for appellee.

Before PHILLIPS, and PECK, Circuit Judges, and McRAE, District Judge.*

PECK, Circuit Judge.

Defendant-appellant was indicted for perjury under 18 U.S.C. § 1621. The District Court entered judgment of conviction against appellant pursuant to jury verdict, and following the denial of appellant's motion for a new trial this appeal was perfected.

In 1960 appellant was convicted of robbery of a federal savings and loan association for which he is presently serving a fifteen year sentence. Subsequent to this conviction appellant has filed several motions to vacate pursuant to section 2255 of Title 28 U.S.C. While a case involving one of said motions was on appeal, appellant submitted an affidavit to this court which in part alleged that appellant, at the time he was confined in the Louisville, Kentucky, city jail as a robbery suspect, requested the Chief of Detectives, Major Priest Fry, to call appellant's retained counsel but that Major Fry did not call the attorney as he promised to do. On the basis of this affidavit, which, the government notes, was filed less than one month after the Supreme Court decided Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.2d.2d 977 (1964), we remanded the case to the District Court for the purpose of conducting a hearing on the allegations. (Case No. 15890, Feb. 19, 1965). It was at this hearing that appellant allegedly perjured himself.

At that hearing appellant's version of the events subsequent to his arrest in 1960 was as follows. He was arrested at approximately 4:00 p.m. on January 28, and was then booked, fingerprinted and put through a series of police lineups. At approximately 8:00 p.m., appellant was arraigned at Night Police Court, at which time he asked his wife who was with him to contact an attorney. The next day, January 29, appellant was interrogated by several city detectives with respect to various robberies which had been committed in the area. He was taken to Major Fry's office around lunch time where he was again questioned, this time about several unsolved bank robberies. After lunch, which appellant had with Major Fry in his office, the Major stated that since appellant refused to make a statement he was going to call the F.B.I. At this point appellant made the following statement which count one of the perjury indictment charges is false: "And at that time I asked him would he call my lawyer. * * *" After being returned to his jail cell for a time, appellant was again escorted to Major Fry's office where he was confronted with five or six detectives and two special agents from the F.B.I. At this interview appellant asked the police sergeant who was present to let him speak to Major Fry regard-

---

* Honorable Robert M. McRae, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

ing the Major's earlier promise to call appellant's attorney.

Following the testimony of the appellant just summarized, he was asked:

"Q. (Interrupting) Now, you say that Major Fry promised to call your lawyer?"

The second count of the two-count perjury indictment charges that appellant's reply to this question, "He did; yes, sir." was false. In accordance with his earlier testimony as above outlined, appellant explicitly stated at the hearing that his request to Major Fry occurred before the special agents arrived.

The government called three witnesses at the perjury trial, Major Fry and the two F.B.I. agents. Major Fry stated at trial that he saw appellant on January 28, 1960, when the other police officers were getting him ready for the lineup, and although he spoke with appellant, he could not recall what he said at that time. The Major also testified that he had been to a staff meeting until approximately 10:00 or 10:30 a.m. on January 29, and that he saw the accused for the first time that day shortly after leaving that meeting. According to this witness, appellant was then in the company of two F.B.I. agents, in a room adjacent to his office. Major Fry further testified that he had no conference with appellant prior to the time he saw appellant with the federal agents; that appellant did not in the presence of the special agents request him to call an attorney; that he had no conversation with appellant after 10:00 a.m. on January 29, "other than to speak with him"; that he did not notify the F.B.I. that appellant was in custody and available for questioning; that he did not have lunch with appellant in the office in which appellant was being questioned; and that "at no time did Robert Thompson on January the 28th or on January the 29th ever ask me to call his lawyer, his wife, or anyone, at no time."

Major Fry's testimony as to the events of January 29, 1960, is consistent with that of the F.B.I. agents who interviewed appellant to the extent that both agents stated that they arrived at police headquarters sometime between 10:00 and 10:30 a.m. and left at noon or shortly thereafter. Moreover, both agents stated that appellant was the only person present during their interview, and neither heard appellant request Major Fry or any other police officer to call an attorney.

The first element of the crime of perjury, that the statements made by the accused under oath must be false, has to be established by evidence which satisfies the applicable two-witness rule. Briefly stated, this rule provides that "the uncorroborated oath of one witness is not enough to establish the falsity of the testimony of the accused," Hammer v. United States, 271 U.S. 620, 626, 46 S.Ct. 603, 70 L.Ed. 1118 (1926); Weiler v. United States, 323 U.S. 606, 607, 65 S.Ct. 548, 89 L.Ed. 495 (1945), or stated in a more positive manner, "except where the falsity of such oath is indisputably established, as by documentary evidence, it must be shown by the testimony of at least two witnesses, or by the testimony of a witness corroborated by circumstances proved by independent testimony. * * *" Fraser v. United States, 145 F.2d 145, 151 (6th Cir. 1944), cert. denied, 324 U.S. 842, 65 S.Ct. 586, 89 L.Ed. 1403 (1945). Because Major Fry's testimony clearly tends to establish the falsity of the statements for which appellant was indicted in the instant case, the issue presented is whether there was sufficient corroborating evidence.

"When the courts speak of corroborative evidence they mean *evidence aliunde*—evidence which tends to show the perjury independently." United States v. Rose, 215 F.2d 617, 625 (3rd Cir. 1954). One of the considerations which must enter into a determination that such corroborative evidence is sufficient, is that "the evidence, if true, substantiates the testimony of a single witness who has sworn to the falsity of the alleged perjurious statement * * *." Weiler v. United States, supra, 323 U.S. at 610, 65 S.Ct. at 550. Thus it is required that the accusing witness'

statements must be corroborated by circumstances proved by independent testimony, and the "circumstances" proved must be those "which are inconsistent with the innocence of appellant." (Hug v. United States, 329 F.2d 475, 480 (6th Cir.) cert. denied, 379 U.S. 818, 85 S.Ct. 37, 13 L.Ed.2d 30 (1964)).

■ The government here claims that the indictment is supported by three witnesses rather than two, reasoning that it is not disputed that appellant saw Major Fry but once on January 29, 1960, and that the jury "chose to believe that the only time the appellant saw Major Fry was * * * immediately prior to the interview with the F.B.I. agents and that there wasn't any conversation between the defendant and Fry regarding the calling of a lawyer. * * *" The difficulty with this approach, however, is that the government never established by evidence other than Major Fry's own testimony that appellant saw the Major only one time on the day in question. As suggested by appellant, the record does not negate the possibility that he asked the Major to call his attorney either before he was delivered to the interrogation room or at some other time when the federal agents were not present at police headquarters. Although Major Fry's testimony refutes this contention, corroborative evidence is lacking.

■ The government also argues that the extra-judicial admissions made by appellant to the federal agents which differ from his sworn testimony constitute corroboration sufficient to uphold the conviction. The admissions relied upon consist of statements made to the F.B.I. agents during the course of the interview. One agent testified that appellant stated he did not have a lawyer; the second agent testified that appellant had mentioned that he did not know an attorney. However, it is here determined that these inconclusive admissions are not sufficient to sustain this perjury conviction in light of the fact established by the record that one of the two attorneys appellant allegedly asked his wife to contact on January 28, 1960, was contacted by Mrs. Thompson on January 29, and did in fact visit appellant at the city jail on January 30.

Because the evidence adduced at trial failed to establish the primary element of the alleged perjury in accordance with the two-witness rule, the case should not have been permitted to go to the jury. Accordingly, the judgment of the District Court is reversed.