75 A.3d 1038

**EVERGREEN ASSOCIATES, LLC**

v.

**Joseph CRAWFORD.**

**No. 1119, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

Sept. 10, 2013.

180

Jason C. Buckel (Buckel, Levasseur & Pillai, LLC, Cumberland, MD, Douglas S. Walker, Miles & Stockbridge, PC, Easton, MD, on the brief), for Appellant.

William N. Zifchak (Sasscer, Clagett & Bucher, on the brief), Upper Marlboro, MD, for Appellee.

Panel: WOODWARD; ZARNOCH and GARY E. BAIR (Specially Assigned), JJ.

WOODWARD, J.

On May 26, 2009, a fire originated in the basement of a building located at 1 West Main Street in Frostburg, Maryland, resulting in substantial damage to the building. At the time of the fire, appellant, Evergreen Associates, LLC ("Evergreen"), was the owner and commercial landlord of the building, having leased the first floor and part of the basement of the building to appellee, Joseph Crawford, in connection with his operation of a "Gianni's Pizza" restaurant.

Evergreen filed suit against appellee in the Circuit Court for Allegany County, claiming, *inter alia*, that the fire was caused by an unnamed third party who was able to gain access to the basement of the building through an unlocked door. Appellee filed a Motion for Summary Judgment, and the circuit court granted appellee's motion on the grounds that appellee owed no duty to Evergreen to secure the property against the unforeseeable criminal acts of a third party.

On appeal, Evergreen presents one question for our review,[1] which we have rephrased:

Did the trial court err in granting summary judgment in favor of appellee?

Finding no error, we will affirm the judgment of the trial court.

## BACKGROUND

Evergreen, who is the owner and landlord of a four-level building located at 1 West Main Street, Frostburg, Maryland, entered into a lease agreement with appellee on July 1, 2008.

---

1. Evergreen's question presented, in the words of its brief, is as follows: Did the Circuit Court err in finding as a matter of law that Crawford owed no duty to Evergreen to utilize reasonable care to safeguard the leased premises from improper entry resulting in the ultimate damages to the premises?

The lease provided appellee with use of the building's first floor for the purpose of operating a "Gianni's Pizza" restaurant for a one-year term. The first floor had a street-level "front door" entrance for use by appellee's customers. Appellee also leased a small portion of the basement for storage, which had its own basement-level "back door" entrance for use by appellee's employees. The back door could only be locked or unlocked by using a key from outside of the building.

Included within Section 5 of the lease agreement, entitled "Maintenance," was the following language:

Tenant will, at the expiration of the Term or at the sooner termination thereof by forfeiture or otherwise, deliver up the Premises in the same good order and condition as it was at the beginning of the tenancy, reasonable wear and tear excepted. Tenant shall not, however, be liable to repair any damage caused by insured casualty, except to the extent that the cost of such repair exceeds the insurance proceeds with respect thereto and the damage is occasioned by the fault or neglect of Tenant. . . .

On May 26, 2009, a fire originated in the basement of the building, resulting in substantial damage to the entire building. Following the fire, on December 11, 2009, Evergreen filed a complaint in circuit court against appellee, alleging one count of negligence. In its complaint, Evergreen asserted that "the fire was started by an unnamed assailant who freely entered the [b]uilding through an unlocked door," which was made possible by appellee: (1) leaving a door unlocked, and/or (2) providing all of his employees with keys to the building and not requiring the return of such keys upon termination of employment. On April 14, 2010, Evergreen filed an Amended Complaint, adding a count of breach of contract.[2] As to the breach of contract claim, Evergreen argued in its amended complaint that appellee violated Section 5 of the lease by "failing to deliver the [b]uilding in the same good order and condition as it was at the beginning of the tenancy."

---

2. Evergreen also added a count for trespass, which is not material to the instant appeal. *See* footnote 3, *infra.*

Appellee filed a Motion for Summary Judgment on June 8, 2012. Appellee argued that he did not "owe a legal duty of care to Evergreen to protect its property against the criminal activities (arson) of third parties," thereby precluding Evergreen's negligence and breach of contract claims as a matter of law. On July 13, 2012, the circuit court held a hearing on appellee's motion for summary judgment. Subsequent to the hearing, the court granted appellee's motion as to both the negligence and breach of contract claims in an order dated July 20, 2012.[3] The circuit court reasoned that there was "no authority for the proposition that [appellee] owed a duty to protect [Evergreen's] property from the unforeseeable criminal acts of a third party." Evergreen noted a timely appeal to this Court.

Additional facts will be set forth below, as needed, to resolve Evergreen's question presented.

## *STANDARD OF REVIEW*

This Court's review of a trial court's grant of summary judgment is well established:

The question of whether a trial court's grant of summary judgment was proper is a question of law subject to *de novo* review on appeal. Summary judgment is appropriate when there is no genuine dispute as to any material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law. On appeal, the appellate court will review the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the facts against the moving party. In reviewing a grant of summary judgment under Maryland Rule 2–501, we independently review the record to determine whether the parties properly generated a dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law.

---

**3.** In addition, the trial court granted summary judgment in favor of appellee on Evergreen's trespass claim. Evergreen does not challenge that ruling.

*Worsham v. Ehrlich,* 181 Md.App. 711, 723, 957 A.2d 161, *cert. denied,* 406 Md. 747, 962 A.2d 373 (2008) (internal citations omitted). In the usual case, this Court must "first determine whether there are disputed material facts. A dispute of fact is material when it might affect the outcome of the case. If we conclude there are no disputed material facts, we decide whether the moving party is entitled to judgment as a matter of law." *Page v. Nat'l R.R. Passenger Corp.,* 200 Md.App. 463, 478 (2011). A proper analysis of the instant case, however, calls upon us to address the legal issue first, before determining if there are any material facts in dispute. *See Todd v. MTA,* 373 Md. 149, 155–56, 159, 816 A.2d 930 (2003) (recognizing that a court may determine the duty owed by one party to another prior to resolving the existence of disputed material facts).

## *DISCUSSION*

Evergreen contends that appellee's "failure to properly secure the leased premises[ ] was an actual and proximate cause of Evergreen's damages and that if [appellee] had properly secured the leased premises by locking exterior doors and safeguarding keys to the [b]uilding, Evergreen would not have been damaged." According to Evergreen, "[t]he Circuit Court erred by determining as a matter of law that [appellee] owed no duty to reasonably safeguard the leased premises." Evergreen recognizes that no Maryland case has ever imposed a duty of care owed by a tenant to a landlord, but argues that, "[b]ecause [appellee] exercised exclusive control over the leased premises and the risk of harm was clearly increased if [appellee] failed to properly secure the premises, it is appropriate to impose a duty of reasonable care upon him." Evergreen contends that it "is not attempting to impose a duty upon a tenant to prevent under any circumstances a criminal from breaking and entering and damaging the subject building[,]" but, rather, a "duty to take reasonable steps to safeguard the leased premises so as to prevent unlawful entry which may give rise to damage or destruction." (Emphasis omitted).

Because the trial court granted summary judgment as a matter of law on the issue of duty, Evergreen contends critical facts not susceptible to resolution by summary judgment never reached the jury—namely, "whether [appellee] breached [the] duty by leaving doors unlocked, failing to account for keys given to third parties, or removing interior barrier doors allowing unfettered access to the basement of the [b]uilding." The determination of whether appellee complied with the duty of care, according to Evergreen, "is predomina[nt]ly a question for the fact-finder and thus inappropriate for resolution by summary judgment."

In response, appellee argues that there is no "special relation" between appellee and Evergreen—as conceded by Evergreen—that would impose a duty on appellee to prevent the acts of a third party pursuant to § 315 of the *Restatement (Second) of Torts.* Although Maryland does recognize a common law duty owed by a landlord to a tenant, appellee asserts that "[n]o Maryland case found has ever recognized a duty in tort owed by a tenant to protect the landlord from physical harm caused by the intentional criminal acts of [a] third part[y]." Even if a landlord's common law duty to a tenant was reciprocally applied to the parties in the matter *sub judice,* appellee asserts that "the conceded absence of knowledge of prior similar criminal activity would preclude its application." Appellee concludes that the trial court's grant of summary judgment should be affirmed, because he "did not owe Evergreen a duty ... to protect the premises against intentional criminal conduct (arson) by an unknown third party." We agree with appellee and shall explain.

## I.

### Negligence

"In order to state a claim in negligence, the plaintiff must allege and prove facts demonstrating '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury

proximately resulted from the defendant's breach of the duty.' " *Dehn v. Edgecombe,* 384 Md. 606, 619, 865 A.2d 603 (2005) (citations omitted). In granting summary judgment in the instant case, the trial court determined that there was "no authority for the proposition that [appellee] owed a duty to protect [Evergreen]'s property from the unforeseeable criminal acts of a third party." Thus, on appeal, the focus of our inquiry is to determine whether a legally cognizable duty was owed by appellee to Evergreen. "[F]or without a duty, no action in negligence will lie." *Id.*

### *Duty*

 "Whether a plaintiff has presented sufficient evidence of the elements of negligence is generally a question for the fact finder, but the existence of a legal duty is a question of law to be decided by the court." *Corinaldi v. Columbia Courtyard, Inc.,* 162 Md.App. 207, 218, 873 A.2d 483, *cert. granted,* 388 Md. 404, 879 A.2d 1086 (2005). In the context of negligence, a duty is "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Pendleton v. State,* 398 Md. 447, 461, 921 A.2d 196 (2007) (citation and internal quotations omitted). "[T]he determination of whether a duty should be imposed is made by weighing the various policy considerations and reaching a conclusion that the plaintiff's interests are, or are not, entitled to legal protection against the conduct of the defendant." *Rosenblatt v. Exxon Co., U.S.A.,* 335 Md. 58, 77, 642 A.2d 180 (1994).

### *A Landlord's Duty to a Tenant*

 In the instant matter, Evergreen asserts that it was harmed by a criminal act—namely, arson—of an unknown third party. In order to determine what duty, if any, appellee owes to Evergreen to prevent such harm, we begin our analysis with the duty owed by a landlord to a tenant concerning third-party criminal acts.

Generally, there is no duty to control the conduct of a third person and prevent him or her from causing physical harm by criminal acts, absent a "special relationship." *Rhaney v. UMES*, 388 Md. 585, 597, 880 A.2d 357 (2005). Section 315 of the *Restatement (Second) of Torts* describes the limited situations constituting a special relationship:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

 (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

 (b) a special relation exists between the actor and the other which gives to the other a right to protection.

*Restatement (Second) of Torts* § 315 (1965); *see also Lamb v. Hopkins*, 303 Md. 236, 242, 245, 492 A.2d 1297 (1985) (quoting and adopting § 315 as the "appropriate analytical framework for determining whether an actor has a duty to control a third person" in Maryland). "Special relationships can be established: (1) by statute or rule; (2) by contractual or other private relationship; or (3) indirectly or impliedly by virtue of the relationship between the tortfeasor and a third party." *Latty v. St. Joseph's Soc'y of Sacred Heart, Inc.*, 198 Md.App. 254, 265, 17 A.3d 155 (2011) (citation omitted). Maryland, however, does not recognize the landlord-tenant relationship as a "special relationship" under § 315 that would impose on a landlord a duty to protect a tenant from the criminal acts of a third party. *See Scott v. Watson*, 278 Md. 160, 167, 359 A.2d 548 (1976).

Notwithstanding a lack of a "special relationship" between a landlord and a tenant under § 315, Maryland case law has recognized that, under general principles of negligence, a landlord has a duty to exercise reasonable care for a tenant's safety. Critical to the determination of the existence of a landlord's duty is the degree to which a landlord exercises control over the conditions found within a leased property. Indeed, the Court of Appeals has noted that, "[w]hen a

landlord has leased property but has not parted control with a portion of it, ... the landlord may be liable for a foreseeable injury caused by a known dangerous or defective condition located within the part of the property over which the landlord retained control." *Hemmings v. Pelham Wood LLLP*, 375 Md. 522, 537, 826 A.2d 443 (2003). In *Matthews v. Amberwood Associates Limited Partnership, Inc.*, 351 Md. 544, 719 A.2d 119 (1998), the Court of Appeals explained that

> a common thread running through many of our cases involving circumstances in which landlords have been held liable (*i.e.*, common areas, pre-existing defective conditions in the leased premises, a contract under which the landlord and tenant agree that the landlord shall rectify a defective condition) is the landlord's ability to exercise a degree of control over the defective or dangerous condition and to take steps to prevent injuries arising therefrom.

*Id.* at 557, 719 A.2d 119. "[T]he principle that the landlord may have a duty with regard to matters within his control extends beyond common areas; it may be applicable to conditions in the leased premises." *Id.*

The recognition of a duty on the part of a landlord regarding defective or dangerous conditions over which it retains control has been extended to include criminal activities of third parties where the landlord knows or should know of such activity on the leased premises. In *Scott*, the Court of Appeals articulated this principle as follows:

> If the landlord knows, or should know, of criminal activity against persons or property in the common areas, he then has a duty to take *reasonable* measures, in view of the existing circumstances, to eliminate the conditions contributing to the criminal activity. We think this duty arises primarily from criminal activities existing on the landlord's premises, and not from knowledge of general criminal activities in the neighborhood.

278 Md. at 169, 359 A.2d 548 (emphasis in original).

The *Scott* Court went on to discuss what criminal activity gives rise to a landlord's duty:

Since the landlord can affect the risk only within [its] own premises, ordinarily only criminal acts occurring on the landlord's premises, and of which [it] knows or should have known (and not those occurring generally in the surrounding neighborhood) constitute relevant factors in determining, in the particular circumstances, the reasonable measures which a landlord is under a duty to take to keep the premises safe.

*Id.* "We d[o] not make the landlord an insurer of its tenants against these criminal acts; rather, a landlord has a duty to 'take reasonable measures, in view of the existing circumstances, to eliminate those conditions contributing to the criminal activity.'" *Rhaney,* 388 Md. at 599–600, 880 A.2d 357 (citation and emphases omitted).

In *Hemmings,* the Court of Appeals added a third requirement for the existence of a landlord's duty regarding criminal activity of third parties: foreseeability of the harm caused by the criminal activity. The Court explained:

Applying this element of foreseeability requires examining the harm caused by the criminal act against the tenant. A landlord's duty under *Scott* obligates the landlord to take reasonable security measures to eliminate harm that is foreseeable, based on the nature of the known criminal activity on the premises. On the other hand, if the harm is not the sort of harm that a landlord of ordinary intelligence would associate with that criminal activity, the duty does not attach.

375 Md. at 541, 826 A.2d 443.

The *Hemmings* Court summarized a landlord's duty to a tenant by stating that "the duty of a landlord ... depends on the existence of three circumstances: (1) the landlord controlled the dangerous or defective condition; (2) the landlord had knowledge or should have had knowledge of the injury causing condition; and (3) the harm suffered was a foreseeable result of that condition." *Id.* at 537, 826 A.2d 443.

## A Tenant's Duty to a Landlord

Our review of Maryland case law has uncovered no authority to support the proposition that a tenant owes a landlord a duty to protect the landlord from the criminal acts of a third party. Evergreen concedes this point, but nevertheless asks us to recognize "an inherent common law duty to secure the leased premises so as to prevent foreseeable damage to that premises." We decline to do so, for three reasons.

 First and foremost, the declaration of the common law of Maryland, especially a heretofore unrecognized tort duty, is the primary function of the highest court in Maryland, the Court of Appeals. *See Frey v. Frey*, 298 Md. 552, 557, 471 A.2d 705 (1984) (noting that it is the province of the Court of Appeals to "change the common law and abrogate judicially created rules"). Second, Evergreen fails to set forth, with specificity, the circumstances of the instant case that create a duty from appellee to Evergreen. Evergreen's assertion of a duty on the part of appellee "to secure the leased premises so as to prevent foreseeable damage to that premises" only identifies the measure that should have been taken by appellee (*i.e.*, securing the leased premises); it does not articulate the condition causing the harm (*i.e.*, criminal activity of third parties), appellee's knowledge of that condition, or the foreseeable harm (*i.e.*, damage to the leased premises by arson or other criminal act). *See Hemmings*, 375 Md. at 537, 826 A.2d 443.

Finally, at oral argument before this Court, Evergreen agreed that, if a duty was to be imposed on a tenant, such duty should be no broader than a landlord's duty to a tenant. However, assuming that such reciprocal duty was imposed on appellee, the facts of the instant case do not warrant the recognition of a duty by appellee to Evergreen to safeguard the leased premises from the criminal act of arson by unknown third parties. Evergreen admitted that, prior to the fire, no criminal activity had taken place on the leased premises or in the immediate neighborhood. Consequently, there is no evidence in the record that appellee knew or should have

known of the criminal activity that caused the harm to the building. *See Hemmings,* 375 Md. at 537, 826 A.2d 443. Likewise, without any prior history of criminal activity, appellee could not reasonably foresee the harm that could be caused by non-existent criminal activity. *See id.*

In support of the recognition of a tenant's duty to a landlord, Evergreen cites to *Granger University Avenue Corp. v. First State Insurance Co.,* 99 A.D.2d 1022, 473 N.Y.S.2d 813 (1984). In *Granger,* the plaintiff property owner leased a building to the defendants, the City of New York and the Board of Education, for a term of ten years. *Id.* at 814. The plaintiff filed a lawsuit against the defendants, seeking damages "for alleged waste and destruction of the demised premises upon the basis of both a breach of the lease agreements by defendants-tenants and for negligence." *Id.* The crux of the plaintiff's complaint was that the defendants had left the leased premises vacant for the final three years of the lease, during which time there were seven "separate acts of vandalism by unknown third parties, yet defendant did nothing to prevent these acts except to secure the door locks and windows where previous entry had been made." *Id.* The trial court granted the defendants' motion for summary judgment. *Id.* at 815.

On appeal, the Supreme Court of New York, Appellate Division, recognized a duty on behalf of a tenant to a landlord. *Id.* The court stated:

It is a well-settled principle that a tenant in possession has a duty to the landlord to exercise ordinary care to keep the premises in good order and return them at the end of the lease term in the same condition except for ordinary wear and tear.... As noted, this common law rule was made a covenant in the subject lease. A corollary to this principle is that a tenant has a duty to exercise such ordinary care in its possession even against the acts of third parties. Thus, the failure to exercise such ordinary care to prevent acts of vandalism of third parties would constitute

negligence and a tenant may be held liable for property damage resulting therefrom.

*Id.* (internal citation omitted).

The facts in *Granger* are clearly distinct from those in the instant case, thus rendering the holding in *Granger* inapposite. In imposing a duty on the defendants-tenants in *Granger,* the Supreme Court of New York emphasized that there were seven "separate acts of vandalism" during the lease term, which were known to the defendants, yet they failed to take appropriate remedial measures. *Id.* at 815. In the instant matter, unlike *Granger,* there was no prior history of criminal activity that occurred on the premises of the leased building, or even in the immediate neighborhood. Furthermore, in *Granger,* the type of prior criminal activity occurring on the leased premises, *i.e.,* vandalism, was the same type of criminal activity that caused the damage to the leased building. *Id.* As discussed previously, without evidence of prior criminal activity, no harm could be foreseeable. *See Hemmings,* 375 Md. at 541, 826 A.2d 443. Therefore, even if we were to recognize the duty of a tenant as advanced in *Granger,* the facts and circumstances of the instant case would not warrant the imposition of such duty on appellee.

Finally, Evergreen relies on the Court of Appeals' opinion in *Marshall v. Price,* 162 Md. 687, 689, 161 A. 172 (1932), for the proposition that, "when the owner has parted with his control [of the leased premises] the tenant has the burden of the proper keeping of the premises, in the absence of an agreement to the contrary." (Alteration in original) (emphasis omitted). According to Evergreen, appellee "failed to exercise due care to secure the leased premises so as to prohibit an illicit entry into the [b]uilding that could foreseeably cause damage to the [b]uilding." The language of *Marshall* cited by Evergreen, however, is taken out of context. The full quote of the Court's opinion reads:

The law is well settled that, when the owner has parted with his control, the tenant has the burden of the proper keeping of the premises, in the absence of an agreement to the

contrary; **and for any nuisance created by the tenant the landlord is not responsible.**

*Id.* at 689, 161 A. 172 (emphasis added).

Rather than recognize a tenant's duty to take reasonable steps to secure leased property against the foreseeable criminal acts of a third party (as Evergreen suggests), *Marshall* addresses the duty owed by a landlord to a third party who is injured on the leased property. Specifically, *Marshall* holds that a landlord is not responsible for damages to a third party that result from a *nuisance created on the premises by the tenant* that arises after the tenant takes possession. *Id.* Therefore, Evergreen's attempt to find a common law duty from a tenant to a landlord in *Marshall* is without merit. We conclude that there was no error by the circuit court in granting summary judgment in favor of appellee on the negligence count of the Amended Complaint.

## II.

### Breach of Contract

 Evergreen also argues that appellee is in breach of contract due to an "obligation under [Section 5 of] the lease to 'deliver up the Premises in the same good order and condition as it was at the beginning of the tenancy. . . .' "

Md.Code (1974, 2010 Repl. Vol.), § 8–113 of the Real Property Article ("R.P.") reads:

A covenant or promise by the tenant to leave, restore, surrender, or yield the leased premises in good repair does not bind the tenant to erect any similar building or pay for any building destroyed by fire or otherwise **without negligence or fault** on the tenant's part.

(Emphasis added).

The unambiguous language of R.P. § 8–113 precludes a landlord from inserting a "good repair" clause into a lease to enable him or her to recover for the destruction of a building by fire, absent a showing of negligence or fault on the tenant's part. Indeed, Section 5 of the lease agreement limits appel-

lee's liability to repair damage to the building to, among other things, damage that "is occasioned by the fault or neglect of [appellee]." Evergreen asserts that the scope of appellee's liability under the breach of contract claim, and thus under § 8–113, is "either broader than his tort liability ... [or] at a minimum ... concurrent with a tort-based duty." Evergreen, however, does not provide any authority for the proposition that "negligence or fault" within § 8–113 encompasses a broader duty than does the requisite duty found within a claim for negligence. In our view, "negligence or fault" as described in § 8–113 is coterminous with common law negligence. Because, as decided above, there is no duty owed by appellee to Evergreen under general principles of negligence, there can be no "negligence or fault" under R.P. § 8–113. Accordingly, the trial court did not err in granting summary judgment in favor of appellee on Evergreen's breach of contract claim.

**JUDGMENT OF THE CIRCUIT COURT FOR ALLEGANY COUNTY AFFIRMED; APPELLANT TO PAY COSTS.**