REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2340

September Term, 2012

SHARON MARIE MASON

v.

STATE OF MARYLAND

Eyler, Deborah S.
Woodward,
Thieme, Raymond G., Jr.
        (Retired, Specially Assigned),

JJ.

Opinion by Woodward, J.

Filed: November 24, 2015

On December 6, 2012, Sharon Marie Mason, appellant, was convicted of perjury in a bench trial in the Circuit Court for Saint Mary's County because of her false testimony at the trial of her fiancé, Jason Winnegar, for driving under the influence of alcohol ("DUI"). At the DUI trial, appellant testified that she had been driving a Ford Ranger that was pulled over by Trooper First Class Edward Mersman, but that she and Winnegar switched seats when they were stopped. Trooper Mersman testified that he observed a male, later identified as Winnegar, who was driving the truck when it sped past his patrol car, and was sitting in the driver's seat when the truck was stopped.

At appellant's perjury trial, Trooper Mersman again testified that Winnegar was driving the truck, and the State introduced a video of the traffic stop taken from the dashboard camera in Trooper Mersman's vehicle. A transcript of appellant's testimony from the DUI trial also was entered into evidence. Based on Trooper Mersman's testimony, the video, and the transcript, the circuit court found appellant guilty of perjury.

On appeal, appellant presents a single question for our review, which we have rephrased:[1] Was there sufficient evidence to convict appellant of perjury? For the reasons set forth herein, we uphold appellant's conviction for perjury and thus affirm the judgment

---

[1] Appellant's question presented was:

> Under Maryland Law, a conviction for perjury must be supported by two witnesses, or one witness with sufficient independent, corroborative evidence to take the place of that second witness. Was the evidence presented sufficient, in light of this two-witness rule, to convict Ms. Mason for perjury, where the State attempted to rely upon one witness and circumstantial evidence?

of the circuit court.

<u>**BACKGROUND**</u>

On May 29, 2011, appellant and Winnegar were stopped for speeding by Trooper Mersman of the Maryland State Police. After smelling an odor of an alcoholic beverage on Winnegar's breath and person, Trooper Mersman removed Winnegar from the truck and asked him to perform three field sobriety tests. Winnegar failed one test,[2] and Trooper Mersman arrested him for DUI.

Winnegar's jury trial was held on February 29, 2012. At the trial, Trooper Mersman testified that he observed a speeding Ford Ranger drive past his patrol car, and that a white male, later identified as Winnegar, was driving. He also testified that there was a female in the passenger's seat, and that, when the truck drove by, both the driver and the passenger were wearing seat belts. Trooper Mersman noted that Winnegar was still in the driver's seat when he approached the truck after it had stopped.

Appellant testified at Winnegar's trial. She stated that, contrary to Trooper Mersman's testimony, she was driving the truck when it was pulled over, and Winnegar, who had been drinking, was in the passenger's seat. Appellant explained that, when they were stopped, the two switched seats, because "the [truck's] tags were dead" and Winnegar did

---

[2] Winnegar only performed the first of three field sobriety tests: the horizontal gaze nystagmus test. He declined to take the second and third tests, the walk and turn and one leg stand, due to a recent injury to his ankle.

2

not want to get appellant in trouble.[3]  According to appellant, in the process of changing seats, she did not lift her weight off the bench seat of the truck, but shifted from one side to the other while Winnegar lifted himself over her.  Despite appellant's testimony, the jury found Winnegar guilty of DUI.[4]

On April 4, 2012, appellant was indicted for perjury based on her testimony at Winnegar's DUI trial.  She entered a plea of not guilty, and a bench trial was held on December 6, 2012.  Trooper Mersman was the only witness called by the State.  He again testified that, when he saw the Ford Ranger drive by, a white male was driving the truck, a white female was in the passenger's seat, and both were wearing seat belts.  Trooper Mersman noted that the male was still in the driver's seat wearing a seat belt when the truck came to a stop and the trooper exited his police vehicle.  Trooper Mersman testified that he could "kind of see [appellant]," but could not tell if she was still wearing a seat belt until he reached the driver's side window of the truck.  At that point, Trooper Mersman saw that appellant "was also still in the passenger seat buckled in."  Trooper Mersman noted that he "didn't see any strange movement going on in the vehicle" when he approached.  At the driver's side window, Trooper Mersman made contact with Winnegar "and began [his] traffic stop."

---

[3] Trooper Mersman confirmed that the vehicle registration was suspended due to an insurance violation.

[4] The trial judge in appellant's perjury trial stated that Winnegar was found *not* guilty based on appellant's testimony.  This statement was made in error, as Winnegar was convicted of DUI and other related traffic charges.

In addition to Trooper Mersman's testimony, the State presented a video taken by the dashboard camera in Trooper Mersman's police vehicle. The video showed the entire stop of the truck and the encounter between Trooper Mersman, Winnegar, and appellant. Appellant did not testify at her perjury trial, but a written transcript of her testimony from Winnegar's DUI trial was introduced into evidence.

Based on Trooper Mersman's testimony, the video, and the transcript, the circuit court concluded that appellant had perjured herself at Winnegar's trial. In support of its conclusion, the court offered the following explanation:

> I'm going to find that the testimony [ ] given was false. And it's based on what I saw. What I saw was a stop. I saw a policeman—heard a policeman testify that he had a vehicle in his radar beam operated by a white male and that white male, he was—as they went past, he exercised his police duties by turning on his equipment, following the vehicle into a parking lot and then stopping that vehicle.
>
> Let me get into more detail about why I believe that the documentary evidence of the videotape is very telling here and collaborates [sic] the officer's testimony. The car turned into a right-hand turn into the parking lot of that carry-out, went past the fuel tanks. In the meantime, that's a right-hand turn with continued maneuvering in order to come to the stop. The trooper immediately got out of the vehicle, walked up to the vehicle, placed his hand on the back right-hand corner of that vehicle and the car did not move around and that was what [appellant's counsel] was objecting to earlier, but my vision of it was I can look at and make my own beliefs, beyond a reasonable doubt standard beliefs, that nobody was moving around in that car.
>
> Now, not to be derogatory toward you or disrespectful, you are a fairly large individual. The vehicle came to a stop within a very short period of time, seconds if any, the man who was brought into the original trial, [ ] Winnegar, got out of the vehicle on the driver's side,

4

came straight out of the vehicle and the video was then fast forwarded to when you got out of the vehicle. When you got out of the vehicle, the car moved as it moved when he got out of the vehicle. You walked around to the back, lowered the tailgate, sat on the tailgate and again the truck moved. And the Court cannot divest itself from the fact that this was a very small, two person pickup truck. And no further movements were observed by the Court looking at the videotape. I will tell you, I could not tell through the blacked out windows whether or not there was movement or not, but the vehicle itself, circumstantially I believe, that the movement did not take place. As a result I find that your testimony was false.

Appellant was sentenced to one year imprisonment, with all but three days time served suspended, and two years of supervised probation. Appellant then filed this timely appeal.

## STANDARD OF REVIEW

The standard of review for non-jury trials is governed by Maryland Rule 8-131(c), which requires this Court to accept the factual findings of the trial court unless clearly erroneous. Determinations of legal questions or conclusions of law based on the trial court's findings of facts are reviewed *de novo*. *Saxon Mortg. Servs., Inc. v. Harrison*, 186 Md. App. 228, 262-63 (2009).

> "In reviewing a challenge to the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the prosecution in order to determine whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We defer to the fact-finder's decisions on which evidence to accept and which inferences to draw when the evidence supports differing inferences. In other words, we give deference to all reasonable inferences [that] the fact-finder draws, regardless of whether . . . [we] would have chosen a different reasonable inference. In our independent review of the evidence, we do not distinguish between circumstantial and direct evidence because [a] conviction may be sustained on the basis of a single strand of direct evidence or successive links of circumstantial evidence."

5

*Montgomery v. State*, 206 Md. App. 357, 385 (alterations in original) (quoting *Morris v. State*, 192 Md. App. 1, 30-31 (2010)), *cert. denied*, 429 Md. 83 (2012).

## **DISCUSSION**

### **I. Factual Findings of the Trial Court**

Appellant initially argues that the trial court made improper factual inferences regarding the video showing Trooper Mersman's traffic stop of Winnegar's truck. According to appellant, the trial court was clearly erroneous in concluding that, because the truck moved when appellant got in and out of the vehicle, the truck also should have moved if appellant and Winnegar had switched seats. Appellant contends that this inference was not rational, because the truck would not move in the same way when appellant shifted her weight from one side of the truck to the other as when she added or subtracted her weight from the truck. Appellant supports this argument by stating that the video shows that when appellant shifted her weight while seated on the truck's tailgate, the truck did not visibly move.

The State responds that it was rational for the trial court to infer that the truck would have moved if appellant and Winnegar had traded seats. We agree with the State.

As noted above, we defer to the fact finder's inferences from the evidence when the evidence supports different inferences. *Montgomery*, 206 Md. App. at 385. Here, the trial court first observed from the video that the truck "did not move around" when the trooper exited his vehicle and walked up to the truck. The court then took note of "a very short

6

period of time, seconds if any," from when the truck stopped and Winnegar "got out of the vehicle on the driver's side." The court also saw on the video that, when appellant, "a fairly large individual," got out of the truck, it moved, and when she sat on the tailgate, "again the truck moved." Finally, the court stated that "this was a very small, two person pickup truck." Based on these facts, the court concluded that the video showed that "nobody was moving around in that car," and thus there was no switching of seats by Winnegar and appellant.

We hold that the trial court's factual conclusions based on the video are reasonable and rational inferences. Our holding is based on our own viewing of the subject video. First, like the trial court, we note that the truck has a very small cab, in which switching seats would be an almost acrobatic task. Second, in addition to appellant being a "fairly large individual," Winnegar is also a tall individual, adding to the difficulty of the driver and passenger changing seats. Third, once the truck came to a complete stop and the brake lights went off, approximately nine seconds elapsed before Trooper Mersman reached the driver's side door of the truck, giving the occupants a very short amount of time in which to change places. Fourth, within those nine seconds, the truck stays perfectly still.

Finally, we find no merit in appellant's contention that the video showed that the truck did not move when appellant shifted her position while sitting on the truck's tailgate. Quite the opposite; when appellant shifted her weight, the truck visibly shook. Because the truck shook when appellant shifted her weight while sitting on the tailgate, it was more than reasonable for the trial court to conclude that, had Winnegar and appellant traded seats in the cab of the truck, the video would have shown movement by the truck. Therefore, we

7

conclude that the trial court was not clearly erroneous by inferring from the video that appellant and Winnegar did not trade seats at the time of the traffic stop.

Having concluded that the trial court's inferences regarding the lack of movement by the truck were not clearly erroneous, we next turn to whether the video and the inferences drawn therefrom sufficiently meet the requirements of the two-witness rule to sustain a conviction for perjury.

## II. The Two-Witness Rule

### A. The Rule's Applicability

The two-witness rule originally required that a conviction for perjury be proved by the direct and positive testimony of two witnesses. *Brown v. State*, 225 Md. 610, 616 (1961). Maryland has relaxed the rule, and currently allows a perjury conviction to stand based on the direct testimony of two witnesses, or the testimony of one witness combined with other independent corroborative evidence. *Id.* at 616-17.

The State urges this Court to abandon the two-witness rule as "an artifact of the jurisprudence of the Court of Star Chamber." According to the State, "[t]he last time the Court of Appeals discussed the two-witness rule in any detail was more than 50 years ago in *Brown*, where it criticized the rule." The State argues that "the law of perjury should be made consistent with the law of virtually every other crime in the State of Maryland—the finder of fact is entitled to make assessments of credibility without regard to the number of witnesses on either side." The State concludes that, although the two-witness rule is *stare decisis* and this Court's power to amend the common law is more limited than that of the

Court of Appeals, we nonetheless may overturn a rule that "has become so unsound that it is no longer suitable to the people of this State." (Quoting *Malarkey v. State*, 188 Md. App. 126, 162 (2009)).

Appellant responds that this Court is not the proper forum to abolish the two-witness rule. Appellant contends that a change in the two-witness rule should come from either the Court of Appeals or the General Assembly. Appellant concludes that public policy continues to be served by the two-witness rule, because it prevents "hasty and spiteful retaliation in the form of unfounded perjury prosecutions." (Quoting *Weiler v. United States*, 323 U.S. 606, 609 (1945)).

As noted above, at its inception, the two-witness rule required that a conviction for perjury be proved by the direct and positive testimony of two witnesses. *Brown*, 225 Md. at 616. In *Smith v. State*, this Court set forth a basic history of the rule's origins:

> In 1640, the Court of the Star Chamber was abolished and its jurisdiction transferred to the King's Bench. Proceedings in the Star Chamber had always been conducted according to ecclesiastical or civil law. **Ecclesiastical law required at least the direct and positive testimony of two witnesses in order to convict.** Since the crime of perjury had been prosecuted almost entirely in the Star Chamber, it follows that the rule requiring two witnesses accompanied the transfer of jurisdiction to the King's Bench. **Since perjury was one of the few crimes in which the accused was allowed to testify, the rule gained acceptance in the common law court. If only one person's testimony was offered against the accused, the situation would present oath against oath, or a "draw". The quantitative theory of testimony, then, played a key role in the establishment of the rule.**

51 Md. App. 408, 420-21 (1982) (emphasis added) (footnote and citations omitted); *see also*

*Hourie v. State*, 53 Md. App. 62, 68-82 (1982) (providing a detailed and colorful history of the law of perjury from its origins in the civil system), *aff'd*, 298 Md. 50 (1983).

Although the quantitative theory of testimony has been rejected in modern common law in favor of "the rational notion of analyzing and valuing testimony other than by numbers," the two-witness rule has remained a part of common law perjury jurisprudence. *See Hourie*, 53 Md. App. at 69. As previously stated, Maryland has abandoned a strict interpretation of the two-witness rule, and no longer requires two witnesses' direct and positive testimony. In *Brown*, the Court of Appeals stated:

> [T]he rule has been relaxed so as to allow a conviction of perjury to stand if there are two witnesses, or one witness corroborated by circumstances proved by independent testimony. The testimony of one witness and other independent corroborative evidence must be of such a nature so as to be of equal weight to that of at least a second witness, thus foreclosing any reasonable hypothesis other than the defendant's guilt. It has been held that circumstantial evidence, including documentary evidence, springing from the defendant himself, may take the place of a "living witness."

225 Md. at 616-17 (citations omitted).

Nevertheless, this Court criticized the two-witness rule as articulated in *Brown*, stating that it was "incongruous in our present system of jurisprudence." *Smith*, 51 Md. App. at 421 (citations and internal quotation marks omitted). Writing for this Court in *Hourie*, Judge Moylan concluded, after detailing the history of the rule, that it was an "ancient fly in amber and preserved beyond its time by a fluke of history." 53 Md. App. at 68-69.

The Court of Appeals, however, granted *certiorari* in *Hourie* and affirmed the petitioner's conviction, basing its decision on the standard articulated in *Brown*. *Hourie*, 298

10

Md. at 61, 64. The Court concluded that "[t]he evidence in this case forecloses any reasonable hypothesis other than the defendant's guilt. Thus, we hold that the evidence clearly was sufficient to prove beyond a reasonable doubt that [the petitioner] was guilty of perjury as charged." *Id.* at 64. Since *Hourie*, Maryland courts have not had the opportunity to address the two-witness rule's continuing applicability.

Although the two-witness rule under *Brown* has been criticized, the rule has not been overturned in Maryland. The State is correct that "the doctrine of *stare decisis* does not 'preclude us from changing or modifying a common law rule when conditions have changed or that rule has become so unsound that it is no longer suitable to the people of this State.'" *Malarkey*, 188 Md. App. at 162 (quoting *Livesay v. Balt. Cnty.*, 384 Md. 1, 15 (2004)). This Court, however, has held explicitly that a change in the two-witness rule is not our task. *Smith*, 51 Md. App. at 426 ("It remains for the Court of Appeals or the General Assembly to determine the continued validity of the [two-witness] rule in other circumstances."); *see also*, *e.g.*, *Kulikov v. Baffoe-Harding*, 215 Md. App. 193, 208 (2013) (declining to change the common law regarding venue transfers); *Evergreen Assocs., LLC v. Crawford*, 214 Md. App. 179, 191 (2013) ("[T]he declaration of the common law of Maryland . . . is the primary function of the highest court in Maryland, the Court of Appeals."). Therefore, despite any concerns that we may have about the continued viability of the two-witness rule, we will not abandon it here.

In addition, the two-witness rule was originally designed for oath-against-oath cases. *See Smith*, 51 Md. App. at 421. The facts before us present just such an oath-against-oath

11

case. Trooper Mersman and appellant testified to the same occurrence, both based on their first-hand observations, but offered contradictory testimony. The State then offered direct and circumstantial evidence via the video recording of the traffic stop. The instant case thus presents a factual setting well-suited for the application of the two-witness rule as articulated in *Brown*.

## B. Satisfaction of the Two-Witness Rule

Appellant contends that the State presented insufficient evidence to convict her of perjury because the two-witness rule was not satisfied. According to appellant, "when the [S]tate seeks to prove its case with the direct testimony of one witness corroborated by independent evidence, that evidence must be (1) independent, (2) corroborative, and (3) at least as weighty as a second witness." Appellant argues that the video was not sufficiently independent or corroborative of Trooper Mersman's testimony, nor did it have the weight of a second witness.

According to appellant, the video was not independent because it required Trooper Mersman's explanation in order to support the State's case.[5] Appellant argues that, because it is impossible to see through the back window of the truck on the video, without Trooper Mersman's testimony, "the court had no way of inferring that Trooper Mersman's narrative was any more likely than [appellant's]."

---

[5] Appellant also suggests that the video is not independent because it required Trooper Mersman's authentication. However, appellant stipulated to the authenticity of the video at trial, and thus waived this argument on appeal.

12

Appellant also contends that the video was not sufficiently corroborative of Trooper Mersman's testimony. According to appellant, "[e]vidence cannot be said to sufficiently corroborate one side if it is consistent with both sides' narratives." (Footnote omitted). Appellant concludes that, because the video could be completely consistent with her narrative of events, it cannot independently corroborate Trooper Mersman's testimony.

Finally, appellant states that the video evidence did not provide the same weight as a second witness. Appellant argues that, "[i]f the evidence in this case were two witnesses and no video, and one of the witnesses testified to the exact content visible in the video, the State would not have been able to prove, by the two-witness requirement, that [appellant's] statements were false." Appellant thus concludes that the two-witness rule was not satisfied, and that her conviction for perjury must be overturned.

The State counters that there was sufficient evidence to convict appellant of perjury. According to the State, "independent evidence" is simply evidence outside of the testimony of the prosecution's principal witness, and it need not conclusively prove all of the elements of the crime.[6] The State argues that the video evidence in the present case is independent because its relevance does not hinge on Trooper Mersman's testimony and it alone supports a rational inference that Winnegar was the driver of the truck.

---

[6] The State also urges us to analogize the independent evidence requirement in perjury cases to Maryland's law on confessions, which requires independent evidence in addition to a defendant's confession before a conviction may be sustained. Although we note similarities in the independent evidence requirement for confessions, we conclude that there is sufficient law regarding independent evidence for perjury convictions that we need not venture into the law of confessions.

13

The State next contends that the video evidence was substantially corroborative of Trooper Mersman's testimony to meet the requirements of the two-witness rule. According to the State, evidence is corroborative if it substantiates a material part of the testimony of the prosecution's principal witness. Under this standard, the State argues that the video corroborates Trooper Mersman's testimony that Winnegar was the driver of the truck, because it shows Winnegar exiting from the driver's side door of the vehicle, and "no movement of the small pickup truck that the court could associate with its occupants switching positions."

Finally, the State argues that overall, the two witness rule is satisfied if "[e]vidence of perjury is . . . presented by the direct testimony of two witnesses, or a combination of testimony and corroborating circumstantial evidence which allow a rational finder of fact to make non-speculative inferences of guilt." According to the State, appellant's perjury was proved beyond a reasonable doubt through Trooper Mersman's testimony corroborated by the video evidence showing that Winnegar emerged from the driver's side door at the time of the traffic stop and that the truck did not move after it came to a stop.

As noted in *Brown*, "[t]he testimony of one witness and other independent corroborative evidence must be of such a nature so as to be of equal weight to that of at least a second witness, thus foreclosing any reasonable hypothesis other than the defendant's guilt." 225 Md. at 616-17. Maryland courts have not yet determined what evidence will suffice as independent and corroborative to meet the two-witness standard when the prosecution relies on the direct testimony of one witness and other independent corroborative

14

evidence. Various federal courts have explicitly discussed the evidence needed to meet the independent and corroborative standard in this scenario. Because the federal perjury statute contains almost identical elements as the crime of perjury in Maryland, we find these cases instructive to the case *sub judice*. *Compare* Md. Code (2002, 2012 Repl. Vol.), § 9-101 of the Criminal Law (II) Article *with* 18 U.S.C. § 1621 (2012).

In *United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006), Peter Bacanovic, Martha Stewart's stock broker, was convicted of making false statements during sworn testimony in front of the SEC. *Id.* at 281, 289. Bacanovic told the SEC that he had called Stewart about a particular stock and left a message with Stewart's personal assistant. *Id.* at 289. He claimed only to have advised Stewart of the price at which the stock was currently trading, and requested that Stewart return his call. *Id.* The personal assistant with whom Bacanovic spoke, however, testified that Bacanovic had asked that Stewart be notified that the stock would soon start losing value. *Id.* at 316. To corroborate her testimony, the Government introduced a computerized phone log kept by the personal assistant, which read "Peter Bacanovic thinks [the stock] is going to start trading downward." *Id.*

On appeal to the Second Circuit, Bacanovic contended that his conviction for perjury could not stand under the two-witness rule, "because it rested on the uncorroborated testimony of one witness." *Id.* at 315. Noting that the rule requires either the testimony of two witnesses, or the testimony of one witness and "other evidence of independent probative value," *id.* (citations and quotation marks omitted), the Court stated:

> **[T]he independent evidence must, by itself, be inconsistent with**

15

**the innocence of the defendant. However, the corroborative evidence [need not], in itself, be sufficient, if believed, to support a conviction. In other words the two-witness rule has not been construed to require the Government, in effect, to prove its case twice over.**

\*\*\*

The Supreme Court has explained that [t]wo elements must enter into a determination that corroborative evidence is sufficient: (1) that the evidence, if true, substantiates the testimony of a single witness who has sworn to the falsity of the alleged perjurious statement; (2) that the corroborative evidence is trustworthy. We have interpreted the standard to mean that **corroborating evidence is sufficient if it tends to substantiate that part of the testimony of the principal prosecution witness which is material in showing that the statement made by the accused under oath was false**.

*Id.* at 315-16 (alterations in original) (citations and internal quotation marks omitted).

The Court concluded that the phone log made by Stewart's personal assistant was independently corroborative of the assistant's testimony. *Id.* at 316-17. The phone log was admitted as a business record, and thus its trustworthiness was "derive[d] from the circumstances under which it was created, not from its connection to the testifying witness." *Id.* at 316. The Court also determined that the phone log was sufficiently accurate and contemporaneous for purposes of the two-witness rule and thus upheld Bacanovic's conviction. *Id.* at 317.

Previous to *Stewart*, the Second Circuit discussed the requirements of the two-witness rule when only one witness presents direct evidence in *United States v. Weiner*, 479 F.2d 923 (2d Cir. 1973). In *Weiner*, the appellant was convicted based on the direct testimony of the principal witness who stated that he had multiple telephone conversations with the appellant

16

(a claim the appellant denied), along with phone company records and testimony from a second witness about a telephone call between the second witness and the appellant followed by a call from the principal witness to the second witness. *Id.* at 924-25, 929. In determining that this evidence was sufficient to satisfy the two-witness rule, the Court noted that the requirement of a second witness may be fulfilled by "other evidence of independent probative value, circumstantial or direct, which is of a quality to assure that a guilty verdict is solidly founded." *Id.* at 926, 928-29 (citations and internal quotation marks omitted).

In *United States v. Diggs*, the appellant was convicted of falsifying his sworn testimony in front of the grand jury. 560 F.2d 266, 268 (7th Cir.), *cert. denied*, 434 U.S. 925 (1977). At the grand jury hearing, the appellant denied that he delivered, saw, or knew about a box containing a machine gun that was delivered to the house of Halbert Vanover. *Id.* At the appellant's perjury trial, however, Vanover testified that the appellant had delivered a box to his home, and that, when Vanover brought the box inside his house and opened it, he saw that the box contained a machine gun. *Id.* Three other witnesses also testified on behalf of the government, all stating that they had seen the box in Vanover's home, although none had actually seen the appellant deliver the box. *Id.*

The Seventh Circuit held that this testimony was sufficient to meet the two-witness rule, because the testimony of three independent witnesses corroborated the principal witness's testimony. *Id.* at 270. In reaching that conclusion, the Court noted:

> **No wording of the [two-witness] rule requires the corroborative evidence to be sufficient for conviction**; nor does any phrasing permit conviction where the corroboration consists of merely

peripheral testimony not tending to show the falsity of the accused's statements while under oath.

> **The two-witness rule is thus satisfied when there is direct testimony from one witness and additional independent evidence so corroborative of the direct testimony that the two when considered together are sufficient to establish the falsity of the accused's statements under oath beyond a reasonable doubt. "Independent" evidence in this context means evidence coming from a source other than that of the direct testimony.** This independent corroborating evidence must be trustworthy enough to convince the jury that what the principal witness said was correct, the ultimate determination of its credibility being an exclusive function of the jury.

> As in all criminal cases, **the burden on the Government against which its evidence must be judged is that of proving the defendant guilty beyond a reasonable doubt. The two-witness rule in perjury cases merely imposes an evidentiary minimum required to meet this burden as a matter of law.** The rule focuses on the totality of the Government's evidence in order to assure a sufficiency necessary to fulfill its underlying policy that perjury convictions not be based merely on an "oath against an oath."

*Id*. (emphasis added) (footnote and citations omitted).

Applying these standards to the present case, we conclude that the evidence presented by the State satisfied the two-witness rule and thus supports appellant's conviction for perjury.

As stated in *Diggs*, independent evidence is simply "evidence coming from a source other than that of the direct testimony." *Id.* The video evidence in the instant case was clearly independent of Trooper Mersman's testimony. Although the camera was located in his police vehicle, Trooper Mersman did not create the images; the video instead switched on automatically when the traffic stop began, and contemporaneously recorded the stop. In

18

*Stewart*, the Second Circuit determined that a business record prepared by the principal witness was sufficiently independent to meet that standard. 433 F.3d at 316-17. Here, Trooper Mersman did not personally create the video, and thus the video was more independent than the business record in *Stewart*.

In addition, as the *Stewart* Court points out, for evidence to be independent, it must be inconsistent with the innocence of the accused without the help of the principal witness's testimony. *Id* at 315. In the instant case, the video showed the truck come to a stop, and nine seconds later, Trooper Mersman was standing by the driver's side window speaking with Winnegar. The truck did not move in those nine seconds, which, as the trial judge found, would have almost certainly occurred if Winnegar and appellant had been hurriedly switching seats. The lack of movement by the truck and the short amount of time between the truck's stop and when Trooper Mersman began speaking with Winnegar is simply inconsistent with appellant's version of events.

Having determined that the video is independent of Trooper Mersman's testimony, we turn to whether it is also sufficiently corroborative. We note that corroborative evidence need not be sufficient to support a conviction, but instead "is sufficient if it tends to substantiate that part of the testimony of the principal prosecution witness, which is material in showing that the statement made by the accused under oath was false." *Id*. at 316 (citations and internal quotation marks omitted).

In the instant case, the video showed Winnegar exiting the driver's seat of the vehicle, circumstantially supporting Trooper Mersman's testimony that (1) he saw the truck pass his

19

vehicle with Winnegar as the driver and appellant as the passenger; (2) Winnegar was still in the driver's seat with the seatbelt buckled when the trooper exited his vehicle; and (3) Winnegar was in the driver's seat when Trooper Mersman arrived at the driver's side window. The video also recorded that the truck did not move in the time between coming to a stop and when Trooper Mersman reached the driver's side window. Such recording also corroborated Trooper Mersman's testimony that Winnegar was driving, because, as the trial court found, the vehicle would have moved if appellant and Winnegar had been switching places. In addition, the video had independent reliability and trustworthiness as was the case of the phone log in *Stewart*, because the video image was automatically captured when Trooper Mersman began the traffic stop. *See id*. at 316-17.

Finally, we review whether the video evidence is "of such a nature so as to be of equal weight to that of at least a second witness, thus foreclosing any reasonable hypothesis other than the defendant's guilt." *Brown*, 225 Md. at 616-17. To satisfy this final piece of the two-witness test, we adopt the Second and Seventh Circuits' view that, when the direct testimony from one witness and the independent corroborative evidence are considered together, there must be sufficient evidence "to establish the falsity of the accused's statements under oath beyond a reasonable doubt." *Diggs*, 560 F.2d at 270; *see Stewart*, 433 F.3d at 315; *Weiner*, 479 F.2d at 926. In our view, Trooper Mersman's testimony that he saw Winnegar driving the truck, combined with the independent and corroborative evidence offered by the video of the traffic stop, is sufficient to prove beyond a reasonable doubt that appellant's testimony at Winnegar's DUI trial was false. Accordingly, we conclude that the two-witness rule was

20

satisfied, and thus appellant's conviction for perjury will be upheld.

Nevertheless, appellant argues that three different federal cases are more persuasive in the instant case than those relied on above.[7]  In *United States v. Freedman*, 445 F.2d 1220 (2d Cir. 1971), the appellant denied in his testimony before the SEC that he was involved in a profit sharing arrangement with a customer of the stock brokerage firm where he worked. *Id.* at 1222, 1225.  The customer testified to the contrary, and, to corroborate the customer's testimony, the Government introduced a check from the customer payable to the appellant's wife. *Id.* at 1225.  The Court concluded that the check was not sufficiently corroborative of the customer's testimony, because the check alone could not explain why it had been written. *Id.* at 1225-26.  According to the Court,

> [t]he crucial concern, that of an explanation of the transaction underlying the giving of the check, is not independently explained by proving the check's existence and its negotiation.  Absent [the customer's] definition of the deal, it is devoid in and of itself of any persuasiveness as to why it was given.

---

[7] Appellant also points to a number of state cases that she contends support her interpretation of the two-witness rule.  Those cases, however, are easily distinguishable.  In *Cook v. United States*, 26 App. D.C. 427, 430-31 (1906), the prosecution failed to put on any witness who directly contradicted the appellant's testimony and version of events.  In *State v. Scanlon*, 569 P.2d 368, 381 (Mont. 1976), the Montana Supreme Court dismissed one count of a perjury indictment because one witness's recollection of what the principal witness had told him regarding the defendant's perjured statement was inadmissible hearsay, and thus was insufficient corroboration under the perjury statute.  Finally, in *State v. Tinker*, 676 A.2d 785, 786 (Vt. 1996), the prosecution offered only one witness's testimony and no independent evidence to corroborate the falsity of the defendant's statements.  Because the State in the instant case offered independent video evidence to corroborate Trooper Mersman's testimony, cases wherein no additional, independent evidence is offered have little, if any, persuasive value.

*Id.* at 1226.

In contrast to the facts of *Freedman*, the video presented in the instant case independently demonstrates what occurred at the traffic stop. Trooper Mersman's testimony is not necessary to show that the truck did not move after it came to a stop as would be expected if appellant and Winnegar switched seats. Nor is his testimony necessary to show that Winnegar was in the driver's seat when the trooper arrived at the driver's side window, because the video shows Winnegar exiting the vehicle from the driver's side door. The video is therefore not "devoid in and of itself of any persuasiveness as to why it was given." *Id.* It independently corroborated that Winnegar was driving the truck.

Next, appellant argues that the corroboration requirement must be satisfied with "evidence which tends to show the perjury independently," citing *McWhorter v. United States* for support. 193 F.2d 982, 985 (5th Cir. 1952). In *McWhorter*, the appellant was convicted of perjury after testifying to opposite facts while under oath in two separate hearings, although neither occasion was her own perjury trial. *Id.* at 983. The Fifth Circuit held that the appellant could not be convicted based solely on her contradictory testimony when the only other evidence offered at the perjury trial was testimony from persons present at the second hearing who described the appellant's recantation of her previous statement. *Id.* at 984-85. The Court concluded:

> Nor does it matter how many witnesses testified at the perjury trial that they heard the defendant make the contradictory statements for such testimony could not be the equivalent of corroborative proof of the corpus delicti of the offense charged. When the courts speak of corroborative evidence they mean evidence aliunde—evidence

22

which tends to show the perjury independently.

*Id.* at 985.  Because there was no "evidence aliunde" beyond the appellant's two contradictory statements, the court reversed her conviction for perjury.  *Id.*

In contrast to the facts in *McWhorter*, Trooper Mersman's testimony provided direct evidence that contradicted appellant's version of events.  Corroborating his testimony was the video of the traffic stop.  The video provided the necessary independent evidence to support Trooper Mersman's testimony, and demonstrated that appellant's testimony was false.

Finally, appellant cites to *United States v. Thompson*, in which the appellant's perjury conviction was based on the testimony of one police officer, and the testimony of two FBI agents.  379 F.2d 625, 627 (6th Cir. 1967).  The appellant claimed that he had requested that the police officer contact his attorney, but the police officer testified that a conversation to that effect never took place.  *Id.* at 626-27.  The FBI agents were not present when the conversation was alleged to have taken place, and thus could corroborate neither the officer's nor the appellant's version of events.  *Id.* at 626-27.  The court concluded that the evidence was insufficient under the two-witness rule, because the FBI agents' testimony did not substantiate a material issue in the case.  *Id.* at 628.

The present case is easily distinguishable from *Thompson*.  The material issue here is whether appellant or Winnegar was driving the truck.  The video shows Winnegar exit the vehicle from the driver's side door and shows no movement of the truck when Winnegar and appellant claimed to have switched seats.  Consequently, in contrast to the facts of

*Thompson*, the video clearly substantiates the material part of Trooper Mersman's testimony that Winnegar, not appellant, was driving the truck.

In sum, the Court of Appeals in *Brown* relaxed the two-witness rule "to allow a conviction of perjury to stand if there are two witnesses, or one witness corroborated by circumstances proved by independent testimony" or other evidence. 225 Md. at 616-17. In the instant case, we conclude that the testimony of Trooper Mersman, who was a witness with direct knowledge of who was driving the truck, combined with the video recording of the traffic stop, which was independent and corroborative of the trooper's testimony, was sufficient evidence to sustain appellant's conviction for perjury under the two-witness rule as articulated in *Brown*. Accordingly, appellant's conviction will stand.[8]

**JUDGMENT OF THE CIRCUIT COURT FOR SAINT MARY'S COUNTY AFFIRMED; APPELLANT TO PAY COSTS.**

---

[8] Appellant does not challenge the other elements necessary to sustain a conviction for perjury under Maryland law, and therefore we do not address those elements here. *See* Md. Code (2002, 2012 Repl. Vol.), § 9-101 of the Criminal Law (II) Article.